# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

CAROLE F. DIDWAY, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-067-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Carole F. Didway (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 16, 1952 and was 56 years old at the time of the ALJ's decision. Claimant completed her high school education and took some college courses. Claimant worked in the past as a janitor, housekeeper, and assembly line worker. Claimant

alleges an inability to work beginning March 6, 2006 due to limitations resulting from depression, bipolar disorder, and back and thyroid problems.

**Procedural History**

On July 25, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 8, 2008, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On August 3, 2009, the ALJ issued an unfavorable decision. On December 29, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to

perform a proper step four analysis; (2) failing to properly weigh the medical opinion evidence; (3) failing to perform a proper credibility analysis; and (4) failing to properly apply the regulations regarding drug and alcohol abuse.

**Step Four Analysis**

Claimant contends the ALJ failed to perform a proper step four evaluation. In his decision, the ALJ determined Claimant suffered from the severe impairment of bipolar disorder. (Tr. 13). He concluded Claimant could perform medium work except that she could only occasionally lift and/or carry 50 pounds, lift and frequently carry 25 pounds, stand and/or walk 6 hours out of an 8 hour workday, sit at least 6 hours in an 8 hour workday, perform simple repetitive tasks and handle incidental contact with the public. (Tr. 14-15). Based upon this RFC, the ALJ found Claimant could perform her past relevant work of janitorial work, housekeeping, and assembly line work. (Tr. 18).

On October 28, 2006, Dr. Theresa Horton performed a mental status examination on Claimant. Claimant demonstrated rapid speech with a friendly attitude and appropriate level of cooperation. Her thought processes were quite tangential although she became organized and goal directed with prompted and had flight of ideas at times. Her mood was predominately anxious, hypomanic, and

5

depressed. Claimant was oriented as to person, place, time, and situation. Her recall and memory were intact. Her concentration was poor and she was easily distracted. Claimant appeared to have an adequate fund of information and was of average intelligence. She was able to complete serial sevens to the number 72 and was able to count to 30 by threes, with prompting after 15. Her insight was poor. Dr. Horton diagnosed Claimant with Bipolar Disorder, Type II, Mixed (predominately hypomanic) and alcohol dependence. (Tr. 234-40).

On January 10, 2007, Dr. Karen Kendall completed a Mental Residual Functional Capacity Assessment on Claimant. Dr. Kendall found Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, and the ability to respond appropriately to changes in the work setting. Dr. Kendall concluded that Claimant "is able to perform simple and some repetitive more complex tasks under ordinary supervision. Clmt is able to interact appropriately for incidental work purposes. Clmt is able to adapt to some work change." (Tr. 256-58).

Dr. Kendall also completed a Psychiatric Review Technique form on Claimant of the same date. She found Claimant suffered from an

affective disorder - bipolar disorder. She determined Claimant suffered from sleep disturbance, decreased energy, and difficulty concentrating or thinking. Dr. Kendall also found Claimant suffered from alcohol dependence, active. She found under the "B" Criteria of the listings that Claimant was moderately limited in the areas of restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, and suffered on or two episodes of decompensation of extended duration. In her consultant's notes, Dr. Kendall stated Claimant's bipolar disorder caused depression, poor concentration, and motivation. Claimant was noted to drink heavily on a daily basis. She appeared to Dr. Kendall to be depressed, alert, oriented, logical, with memory intact. She was logical and appropriate but her speech was rapid at times. Dr. Kendall noted Claimant was tangential and occasionally experience flight of ideas but became organized when directed. Claimant was easily distracted but able to perform serial sevens, had intact memory, and was able to abstract. Dr. Kendall stated Claimant had medications and care available that improved her condition in the past but that she chooses not to be compliant with care. (Tr. 242-51).

Claimant first contends the ALJ failed in his step four analysis by not including all of Claimant's impairments in his

7

hypothetical questioning of the vocational expert. Specifically, Claimant asserts the ALJ failed to include a moderate limitation in her ability to respond appropriately to changes in the work setting. Dr. Kendall's report is somewhat internally inconsistent. On the form, she included a moderate restriction in the ability to adapt but then stated in her narrative that Claimant could adapt to some work changes. Given this conflict, this Court cannot conclude it was error for the ALJ to not include this limitation in the hypothetical questioning.

Claimant next contends that the ALJ "failed to note that his reviewing expert did not fully capture the essence of the mental CE's report." The essence of the report included Claimant's ability to complete serial sevens and counting by threes. Claimant's interpretation of further limitation from her performance before the examiner is mere speculation and did not need to be included in the ALJ's assessment.

Claimant also states the ALJ should have included a limitation for her inability to get along with her supervisors, contending her mental health therapist recorded such a limitation. In fact, the therapist merely regurgitated Claimant's statements and did not make a medical finding of such a limitation. (Tr. 197).

Claimant contends the ALJ improperly found no evidence was presented in the medical record to indicate Claimant experienced

episodes of decompensation. (Tr. 14). This Court must agree with Claimant that Dr. Kendall did indicate Claimant had experienced two or more such episodes. (Tr. 252). Although this is an argument more applicable to a finding of whether Claimant met a listing rather than a step four argument, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. On remand, the ALJ shall consider Dr. Kendall's finding on episodes of decompensation.

Claimant contends the ALJ failed to engage in the three phase analysis required at step four. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ's RFC did not include all of Claimant's limitations involving episodes of decompensation.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination,

9

the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case inquired of the vocational expert as to the exertional level of Claimant's past relevant work. The ALJ did not inquire as to the mental demands of the past work. As a result, the ALJ failed to adequately ascertain and consider the demands of Claimant's past relevant work at the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. Since the ALJ did not accurately ascertain or consider the demands of Claimant's past relevant work, he did not properly consider whether Claimant could meet those demands given his limitations. On remand, the ALJ shall reconsider and reevaluate his step four analysis.

**Evaluation of Medical Opinion Evidence**

Claimant contends the ALJ improperly failed to give controlling weight to his treating physician, Dr. Donald M. Elgin. In a letter dated September 5, 2008, Dr. Elgin found Claimant had been diagnosed with alcoholism, hallucinations, congestive heart failure, history of paroxysmal atrial fibrillation with atrial tachycardia, folic acid deficiency, abnormal liver enzymes, urinary

tract infection, thrombocytopenia and cholelithiasis, low magnesium, chronic microvascular changes in the white matter of her brain, and hypertension. Dr. Elgin requested that the agency "consider this lady for disability due to her record of medical disabilities." (Tr. 261).

In his decision, the ALJ gave Dr. Elgin's opinion "significantly reduced weight" because the medical record did not support his findings. The ALJ specifically found Claimant was not under treatment for any heart conditions. (Tr. 17). Claimant contends Dr. Elgin's records indicate Claimant was taking metaprolol, spironolactone, and furosemide, which Claimant characterizes as heart medications. (Tr. 192). While these drugs are indicated in the medical record to be prescribed to treat Claimant's high blood pressure, these drugs may also be utilized to treat heart conditions, including angina and to treat heart failure. *See*, United States Nat'l Library of Medicine at www.ncbi.nlm.nih.gov. On remand, the ALJ should re-evaluate the opinions of Dr. Elgin regarding Claimant's heart condition and engage in analysis of the factors stated in Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) in affording the appropriate weight to the opinion.

**Credibility Analysis**

The ALJ's evaluation of Claimant's testimony is somewhat suspect. He questions Claimant's credibility wherein she testified that she still suffers from peripheral neuropathy when she had only be diagnosed with the condition on one occasion. The number of diagnoses of a condition does not bear upon a claimant's credibility. He also finds Claimant would have sought treatment for her mental condition if it were as severe as Claimant indicates. Given the nature of mental conditions and a claimant's ability to determine whether they need treatment because of the existence of the condition, the ALJ was obligated to determine further Claimant's reason for not seeking treatment before the wholesale rejection of her testimony. On remand, the ALJ shall reconsider his findings on credibility after further inquiry.

**Application of the Drug and Alcohol Abuse Regulations**

The ALJ determined that Claimant would be unable to work due to her alcoholism but that she may not be found "disabled" due to the effects of alcoholism and "factored out" those effects from his analysis. (Tr. 17). The Social Security Act provides that an individual would not be considered disabled if alcoholism or drug addiction were a "contributing factor material to the Commissioner's determination that the individual is disabled." Salazar v. Barnhart, 468 F.3d 615, 622-23 (10th Cir. 2006). To

that end, the Commissioner must determine whether the individual would still be disabled if he or she stopped using drugs or alcohol. Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001). Careful consideration is to be given to periods of abstinence. Salazar, *supra* at 623. If a claimant's mental impairments cannot be separated from the effects of substance abuse, then the claimant's drug and alcohol addiction is not a contributing factor material to the disability determination. Id. at 624. Additionally, in accordance with an explanatory teletype issued by Defendant, "where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using drugs or alcohol, an ALJ should 'find that DAA is not a contributing factor material to the determination of disability." Id. at 623. The ALJ did not err in eliminating Claimant's alcoholism from his analysis. Indeed, Claimant's argument that he should have included the condition in his hypotheticals is contrary to the current state of the law.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the

13

Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 24th day of July, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE